**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| _____ ) | | |
| **DESHANTA HINTON,** ) | **Civil Action No.: AW-05-2425** | |
| ) | | |
| **Plaintiff,** ) | | |
| ) | | |
| **v.** ) | | |
| ) | | |
| **LANHAM FORD MOTOR** ) | | |
| **COMPANY, et. al.,** ) | | |
| ) | | |
| **Defendants.** ) | | |
| ) | | |

## MEMORANDUM OPINION

This action involves a suit brought by *pro se* plaintiff DeShanta Hinton ("Hinton" or "Plaintiff") against Lanham Ford Motor Company ("Lanham"), John Doe General Manager of Lanham Ford Motor Company ("General Manager"), Special Agent Paul Timko ("Timko"), Special Agent Karen Nester ("Nester"), and Unknown FBI Agents ("FBI Agents") for violating her constitutional rights under 42 U.S.C. §1983 in the application and execution of a court warrant. Currently pending before the Court is Lanham's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [21]. The Court has reviewed the entire record, as well as the Pleadings with respect to the instant motion. No hearing is deemed necessary. See Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the Court will grant Lanham's motion to dismiss Hinton's claims against Lanham and General Manager.

## FACTUAL AND PROCEDURAL HISTORY

The facts of this case as outlined by Lanham are undisputed. Pl.'s Resp. to Lanham at 1.

Hinton is the daughter of Gregory Hinton, who was the subject of a Federal Bureau of Investigations ("FBI") bank robbery investigation which started in or around May 1997. Based on bank surveillance tapes and photographs, and the testimony of a confidential informant, the FBI focused on Gregory Hinton as the leader of a bank robbery gang, the "Jump Suit Guys."

During the investigation FBI agents observed Gregory Hinton operating a 1992 Ford conversion van bearing Maryland license plate number M246077. The van was registered to DeShanta Hinton. Nester initially believed DeShanta Hinton to be the wife of Gregory Hinton, but later determined her to be his daughter.

On December 22, 1999, Nester learned that the van broke down and was towed to the Lanham Ford Motor Company for repairs. The next day, December 23, 1999, the FBI obtained a court order from Magistrate Judge William Connelly to install a mobile tracking device on the van. FBI Agents presented the order to Lanham and were granted access to install the tracking device.

On April 18, 2000, a bank in Springfield, Virginia was robbed. FBI agents had reason to believe that Gregory Hinton was involved in the April 18th bank robbery. Using data from the tracking device FBI agents determined that the van left Gregory Hinton's residence earlier that morning and traveled to the home of Kenneth Johnson ("Johnson"), whom the FBI believed to be a member of the Jump Suit Guys. The van was parked at Johnson's residence during the time of the bank robbery and then traveled to Gregory Hinton's place of employment in Maryland.

Agents of the FBI followed Gregory Hinton from Maryland into the District of Columbia, where Timko questioned Gregory Hinton about his activities earlier that day. During the questioning Gregory Hinton consented to a search of the van which revealed approximately $42,500.00 in the back of the van. Gregory Hinton was immediately arrested and charged with bank robbery because

the money was consistent in composition and denomination with the money taken during the bank robbery in Springfield, Virginia.

Later that evening, FBI agents interviewed Hinton in connection with her father's arrest. Agents specifically asked whether she used her van earlier that day. The van was towed to a secure facility and a search warrant was obtained to do a thorough search of the vehicle. The search produced additional evidence linking Gregory Hinton to the bank robbery on April 18, 2000.

Before his trial, Gregory Hinton unsuccessfully moved to suppress the evidence from the tracking device and the $42,500.00 found in the van, arguing that the court order allowing the installation of the tracking device was not supported by probable cause and that Timko did not obtain valid consent from Gregory Hinton to conduct a warrantless search of the van. Both motions were denied and Gregory Hinton was convicted of bank robbery in November of 2000.

Gregory Hinton's appeal, arguing that the district court erred in finding the April 18, 2000 search consensual, was rejected by the United States Court of Appeals for the Fourth Circuit in 2001. His petition to the Supreme Court was denied in June of 2004.

On September 2, 2005, Hinton filed this action pursuant to 42 U.S.C. § 1983, alleging that her constitutional rights were violated by the installation of the tracking device and subsequent searches of her vehicle. The instant Motion to Dismiss was filed on April 19, 2006. That motion is ripe for review and the Court now issues this opinion.

## STANDARD OF REVIEW

Under Rule 12(b)(6), dismissal of a complaint for failure to state a claim is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In determining

whether to dismiss a complaint pursuant to Rule 12(b)(6), this Court must review the well-pleaded material allegations in the light most favorable to the plaintiff and accept the factual allegations contained within the plaintiff's complaint as true. See Flood v. New Hanover County, 125 F.3d 249, 251 (4th Cir. 1997); Chisolm v. TranSouth Fin. Corp., 95 F.3d 331, 334 (4th Cir. 1996). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." See Papasan v. Allain, 478 U.S. 265, 286 (1986) (citing Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981)); Young v. City of Mount Ranier, 238 F.3d 576, 577 (4th Cir. 2001) (the mere "presence…of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)"). Nor is the Court "bound to accept [Plaintiff's] conclusory allegations regarding the legal effect of the facts alleged." United Mine Workers of Am. V. Wellmore Coal Corp., 609 F.2d 1083, 1085-86 (4th Cir. 1994); Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). Thus, a complaint may be dismissed as a matter of law if it lacks a cognizable legal theory or if it alleges insufficient facts to support a cognizable legal theory. See Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984) (citing 2A J. Moore, Moore's Federal Practice ¶ 12.08 at 2271 (2d ed. 1982)).

## DISCUSSION

The issues presented by the instant motion are (1) whether Lanham is entitled to qualified immunity for allowing FBI Agents to install a tracking device in Plaintiff's van,[1] and (2) whether Plaintiff's claims are barred by Maryland's statute of limitations. For the reasons discussed below, the Court answers both questions in the affirmative.

---

[1] While the defense of qualified immunity is ordinarily decided through a motion for summary judgment, if the factual allegations are not in dispute and the facts, as alleged, are insufficient to establish a constitutional violation, the defendant may entitled to a dismissal of the claim under Rule 12(b)(6). See Jenkins v. Medford, 119 F.3d 1156, 1160 (4th Cir. 1997); see also Jacobs v. City of Chi., 215 F.3d 758, 765 n.3 (7th Cir. 2000).

I.        <u>Lanham is entitled to a defense of qualified immunity</u>

Lanham argues that it is entitled to qualified immunity with respect to Plaintiff's Section 1983 claims because, when it allowed FBI Agents to install a tracking device in her van, it did so pursuant to a valid court order. Plaintiff argues Lanham is not entitled to qualified immunity because she believes that Lanham was under no obligation to grant the Agents access to her van. Pl.'s Compl. at 6. To state a claim under section 1983, Plaintiff must show Lanham deprived her of constitutional rights while acting under the color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). A private individual functions as a state actor when he/she is motivated by the state's investigatory goals and relies on a search warrant. <u>Rodriques v. Furtado</u>, 950 F.2d 805, 814 (1st Cir. 1991). If a private actor is pressed into service by the state to exercise certain powers traditionally reserved by the state, such as assisting in the execution of a search warrant, the private actor can claim qualified immunity against claims of violating the rights of another while performing such duties. <u>See</u> <u>id.</u>; <u>see also Warner v. Grand County</u>, 57 F.3d 962, 965 (10th Cir. 1995) (holding that a private individual who performs a unique government function at the request of a state official who enjoys qualified immunity also enjoys qualified immunity).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001) (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)). To determine if an individual is entitled to a defense of qualified immunity, courts use a two-step analysis. First, a court must determine "whether a constitutional right would have been violated on the facts alleged." <u>McKinney v. Richland County Sheriff's Dept.</u>, 431 F.3d 415, 417 (4th Cir. 2005) (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001)). If the alleged facts, viewed most favorably to the plaintiff, "do not establish a violation of a constitutional right, the inquiry ends, and

the plaintiff cannot prevail." <u>Parrish v. Cleveland</u>, 372 F.3d 294, 301 (4th Cir. 2004). Second, if the court establishes that a right was violated, the court must determine if the right was clearly established at the time of the violation. <u>See</u> <u>McKinney</u>, 431 F.3d at 417.

In the case at hand, the Court does not need to proceed further than the first step. Even viewing the facts in the light most favorable to Plaintiff, the Court concludes that Plaintiff suffered no violation of her constitutional rights because the search was conducted pursuant to a valid court order based on probable cause. <u>See</u> <u>id.</u> at 418. Specifically, Magistrate Judge William Connelly was satisfied that probable cause existed for the installation of a tracking device in Plaintiff's van because three confidential informants testified that they had overheard Gregory Hinton talking about how he was involved in a series of bank robberies; FBI surveillance teams observed Gregory Hinton driving Plaintiff's van; and the *modus operandi* of the Jump Suit Guys was to drive a personal vehicle close to the target bank, steal a car to commit the robbery, and drive back to their personal vehicle to make their get-away. Lanham Reply Ex. 1 at 2-6.

Furthermore, even if the Court were to conclude that Lanham violated Plaintiff's rights by allowing FBI Agents to install a tracking device in her vehicle, Lanham would still be entitled to qualified immunity because the absence of probable cause would not have been evident to an objectively reasonable private citizen under the circumstances. <u>See</u> <u>Rodriques</u>, 950 F.2d at 815. Lanham is entitled to qualified immunity because the warrant was facially valid. Contrary to Plaintiff's assertion that Lanham had a duty to verify the validity of the court order, a lay person faced with a facially valid warrant is not required to independently determine if the court order is valid. <u>Compare</u> Pl.'s Opp'n at 4, <u>with</u> <u>id.</u> (holding that a private individual is under no duty to look behind a facially valid warrant to determine if it is based upon probable cause).

6

II.      <u>Plaintiff's action is barred by the statute of limitations</u>

Lanham also argues that Plaintiff's claims, which stem primarily from incidents that took place in 1999,  fall outside the applicable statute of limitations period. Plaintiff contends that the statute of limitations for her claims should be equitably tolled to 2005, when she received "personal papers or property from her father." Pl.'s Opp'n at 5. Plaintiff asserts that her claims were undiscoverable until 2005 because her father's case was under seal and not accessible without a court order. Pl.'s Opp'n at 5-6. Claims arising under 42 U.S.C. § 1983 borrow the limitation period from state tort law. <u>See</u> <u>Jersey Heights Neighborhood Ass'n v. Glendening</u>, 174 F.3d 180, 187 (4th Cir. 1999).

Maryland law requires a civil action to be filed "within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Md. Code Ann., Cts. & Jud. Proc. § 5-101 (2002). Maryland courts recognize the "discovery rule" where the statute of limitations will begin when a claimant "in fact knew or reasonably should have known of the alleged wrong." <u>Poffenberger v. Risser</u>, 431 A.2d 677, 680 (Md. 1981). A plaintiff should have known of a cause of action if she has "knowledge of circumstances which would cause a reasonable person in the position of the plaintiff to undertake an investigation and an investigation pursued with reasonable diligence would have led to knowledge of the alleged tort." <u>Hartnett v. Schering Corp.</u>, 2 F.3d 90, 92 (4th Cir. 1993).

In <u>Lumsden v. Design Tech Builders, Inc.</u>, 749 A.2d 796, 803 (Md. 2000), the Court of Appeals of Maryland charged homeowners with investigating the cause of the harm to their homes when physical damage became readily apparent. The Court of Appeals ruled that the homeowners had a duty to investigate because they were aware they had suffered an injury. <u>See</u> <u>id.</u>

In the instant case, the allegations against Lanham and General Manger relate to actions that took place in December 1999. Plaintiff initiated this lawsuit on September 2, 2005. However, Plaintiff was aware of her father's arrest, and the FBI's interest in her van on April 18, 2000, because FBI agents interviewed Plaintiff after her father's arrest. During the interview, the agents asked her whether she had used her van during the time period of the robbery. Plaintiff's van was then seized by the FBI to conduct a more thorough search. Finally, the fact that a tracking device was placed in her van was revealed at her father's trial and was the subject of one of her father's motions to suppress filed in July, 2000. Plaintiff knew in April 2000 that her van was seized by the FBI in relation to an investigation that dated back to 1997. Therefore, Plaintiff had enough information to begin an investigation to determine why the FBI was interested in searching her van. With reasonable diligence Plaintiff would have discovered the circumstances surrounding the installation of the tracking device in her van. Plaintiff's failure to file a complaint within three years requires the dismissal of her claims against Lanham and General Manager.

## <u>CONCLUSION</u>

For the reasons stated above, the Court will GRANT Lanham's Motion to Dismiss [21]. An Order consistent with this Opinion will follow.


July 25, 2006                                       _____/s/_____
                                                    Alexander Williams, Jr.
                                                    United States District Judge

8